Number 171736, United States v. Rafael Antonio Del Rosario-Acosta Good morning, your honors. Chief Judge, with your permission, I'd like to reserve three minutes for rebuttal. Yes. My name is Ellie Maranzini. I'm Assistant Federal Public Defender representing the defendant appellant Rafael Del Rosario-Acosta. In this case, the police illegally seized and searched Mr. Del Rosario's car even though it was locked and legally parked on a residential street near his home and he was not within reaching distance of it at the time of his arrest. The conviction should be vacated and the order denying suppression reversed in this case for two reasons. First, because the impoundment of the vehicle was unreasonable under a totality of the circumstances and that it was merely a pretext for investigation. And second, because the car was illegally searched at the scene of the arrest and the district court committed clear error finding otherwise when he credited the officer's testimony, which was riddled with implausibilities, inconsistencies, and contradicted by extrinsic evidence. I'd like to turn first to the impoundment of the vehicle. I believe the easiest way to resolve this case, the cleanest way, would be to hold the impoundment was unreasonable under a totality of the circumstances because there was no valid community caretaking basis for seizing the car in this case. The community caretaking exception to the Fourth Amendment exists and allows officers to fulfill an administrative role. It allows them to impound cars that are, for example, engaged in vehicle accidents that pose a public safety hazard, that impede the flow of traffic, or that are at risk of theft or vandalism if left where they are. It is a function that is totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. And courts have held that a seizure based on community caretaking is invalid if, in fact, the sole purpose was for investigation, if the seizure was just a pretext or subterfuge for investigation. And that's exactly what we have here. The seizure in this case was the epitome of a pretext, and the officers who testified at both suppression hearings and at the trial in this case did not even attempt to hide the fact that their reason for seizing the vehicle was because they were seizing it for investigation. They offered no legitimate community caretaking basis for seizing the car. Do we know from the record, do we know, was it Luquillo, the town? Excuse me? Luquillo. Luquillo. Yes. Do we know whether people park on the street at night or not in that area? Does the record tell us that? The record, I don't believe, speaks to the general practice. But the officers did testify that the car was parked on the side of the street, a residential street, and that it wasn't impeding the flow of traffic and they did not issue any sort of parking citation. Mr. Del Rosario testified that he routinely, almost daily, parked on that street because from that street he had access to the street directly adjacent to it, which is where he lived. And his testimony on that front was corroborated by the cashier at the gas station who testified that Mr. Del Rosario was, in fact, an almost daily customer at that gas station. Does the record show whether he was parked in front of a fire hydrant? The record does not show whether he was parked in front of a fire hydrant. How does that come about? I don't want to read it somehow. You did, Your Honor. There is a portion of the suppression hearing transcript where the judge asks me, and the question he's asking is when he's discussing whether there was a valid Terry stop. And I had said, you know, there was no reason. I was arguing about the Terry stop. And he said that from his view of the picture, it looked like he was parked next to a fire hydrant and that there was a yellow line there. In preparation of this appeal, we attempted to obtain the exhibit that pertained to that portion of the testimony. And that testimony was given by Mr. Del Rosario. He was shown a photograph. And he said, this is where I parked my car that night. And he marked it. That exhibit was lost by the court. We do not have it, but was lost. Correct. We don't have that exhibit. But we do know that the officers testified that he parked legally, that he didn't commit a traffic violation. And the government at no point below, either at the first suppression hearing or the second suppression hearing, argued that the car was seized because he was parked in front of a fire hydrant. If he had been parked in front of a fire hydrant, we can infer that that would have been the easiest argument for the government to make or for the court to rely on to justify the seizure. And the court never made a finding of fact. Its opinion never mentions that the car was parked illegally. But both officers, I take it, testified that it was impounded pursuant to ordinary procedures. They testified. They were cross-examined on that point, or the opportunity was there. They were cross-examined. When asked why it was impounded, they said for investigation or for investigation purposes. They did not say pursuant to ordinary procedures? Not that I recall. The government argued that below, but when the officers were asked specifically why it was impounded, they said that for investigation and because the car belonged to the person who we had arrested. There was an opportunity to cross-examine on what the ordinary procedures might have been, whether they had policies in place. Yes. One of the officers said there was a protocol pursuant to which they always took in the car for investigation purposes. I believe that's right. My memory on that specific point is a little fuzzy, but I do believe that the officers suggested that they routinely seize cars. They didn't say under what circumstances. So if they always impound when they make an arrest, what's wrong with that? Because if that's the procedure, then if that procedure doesn't fit within the community caretaking rationale, then that procedure would violate the Fourth Amendment of the Constitution. But we know the car was on a public street. Yes. So what's wrong with impounding when you make an arrest on a public street, if that's what their consistent policy is? There's no discretion. Then there would be nothing to cabin their discretion. That means they would be able to seize any car, any property, any time a driver is arrested. On a public way. Right. But this Court and the Supreme Court's cases have not been so expansive in what circumstances justify an impoundment. There was an opportunity to cross-examine to get to whether it was reasonable in this location or in this community. See what I'm getting at here? I'm trying to understand what was wrong with it. What was wrong was that the officers testified that they seized the car for investigation. And this Court has held that their subjective motivations is one of the factors to be considered under totality of circumstances. So my recollection is they said they always impound when they make an arrest on a public way. I don't believe they were so specific. I don't believe they said that when this factor and this factor and this factor exist, we always impound. It's just a general we always impound. My recollection is that they said we impounded the car because that's what we do. And the car belonged to the person. But here we have a case where the person was not… So what's wrong with that? Still, I still have the same question. What's wrong if they had a written policy that said impound every time you arrest on a public way? There was no evidence that they had a written policy that said that. If there had been one, would that be okay? No. Because? Because it would be broader than what community caretaking exception allows for. Why would that be so in a community? Because it would be… The car parked at night where there's been an arrest so you know that the person isn't going to be able to come back and take care of the car. What is wrong with that policy? If there were such a policy? I know we're speaking possibly hypothetically. It wouldn't… It would be totally divorced from the police officer's administrative function. And it would be an expansion of the doctrine beyond the bounds of what this court and other circuits and the Supreme Court has held permissible under community caretaking. It wouldn't be a valid case. What case has said that the risk of vandalism, for example, is insufficient? I don't know a case that has said that it's insufficient. But in this case, there was no testimony that there was nothing to suggest that there was a risk of theft or vandalism. That wouldn't be the question. The question would be if there is a standard policy based on the risk of vandalism because the owner of the car or the operator of the car is not going to be there because you've taken them away. You're saying that that would not be a valid policy. I can't really speak to that because that wasn't the basis for seizing the car that was offered below. There is no evidence that that policy exists. And this court in Cochia held that what you look at is the totality of the circumstances and whether the seizure was a reasonable exercise. So you say that, but my understanding is that testimony was that it was standard policy to impound and it was an opportunity to cross-examine on that. You're saying that they had a burden to explain what the basis for the policy were without having been asked? That's right. It was the government's burden at the suppression hearing to establish that the seizure was reasonable. And if Your Honor is suggesting that perhaps the policy on its own would be sufficient to find the seizure reasonable, I would have to disagree with you there because this court's jurisprudence has made it clear that the validity of the seizure does not hinge on whether a policy existed or not. It hinges on a consideration of the totality of the circumstances. Actually, I think our cases say there is no policy. We look to see whether the seizure, the impoundment was reasonable. If there is a policy, then we still have to make sure that it was reasonable. But one of the things we look at is whether there is a policy that removes the discretion from the officer. Right, but it's one of the circumstances to be considered. And the court also considers whether the officer's seizure was motivated, was a pretext for investigation. And so what we have in this case is a case where there was a pretext for investigation. There was no valid community caretaking rationale offered. No risk of theft, no risk of vandalism, no obstruction of traffic, no car accident. The person was not arrested in the car. How can you say there's no risk of theft or vandalism? I don't understand a car being left overnight on a public street. Well, it's a residential street. The testimony was that these officers were very familiar with the area. They did not suggest that it was a high-crime area. And these were officers who were beat cops who routinely patrolled that area. If they had been concerned about theft or vandalism on that street, they would have said so. Or they might have impounded the car. Well, but they were asked specifically, why did you seize the car? And they said, for investigation. They did not say, because we were worried about theft and vandalism. We still have different recollections about what the record shows about what they actually said. Can we go back a little on that record? Yes. The police is called. They're told that there's an armed person in that car. When they arrive, somebody takes off running down where they see the police. Is that important at all for this scenario? As to why they would want to impound the car in which that same person has tried to get in? Is your question whether the facts leading up to the chase would give the police reason to believe there was a gun in the car? Well, there might have been something in the car that the person was trying to hide connected with a gun that had been reported. I don't think so, and for a couple of reasons. First is that the testimony is actually contradicted in a number of respects regarding whether the police received a description of a person who was believed to be armed. The cashier herself testified that she did not provide the police officers with a description. One of the police officers testified that they did not receive a description. A second police officer testified that he did receive a description, but that he was a tall, light-skinned individual. The officers were questioned extensively about whether they saw him in possession of anything that looked like a firearm. They said no. They were asked whether they had reason to believe there was a firearm in the car. They said no. And then on top of that, within the sequence of events, what we have is that they saw him drive up the residential street, and they did not see him park his car. So there's a period of time where they don't have sight of him. Then they see him walking down the street, and that's when they interact with him. But isn't that the same person they see run away from the supermarket? He didn't run away from the supermarket. When they see him walking towards him, that's when they say, what do you have in your fanny pack? And he turns and runs. So they see him running at that later point, and they arrest him because while he's running, he throws controlled substances. And that's why he's under arrest. And when he's under arrest, he's four or five houses away from his car. At some point, did he try to open up his car? There's conflicting testimony on that point, which is one of the reasons that the second point that I made was that it was clear error not to find that the police officers searched the car at the scene. One witness of the four testified that he tried to open the car or put the key in the car. That was one of the police officers. One of the police officers said no such thing, and Mr. Del Rosario adamantly at the first suppression, the second suppression, and the trial denied that he ever tried to get in his car. And the district court at one point found that it wouldn't have made sense for him to try to get in his car because it was a dead-end street, and the street was blocked by a patrol car. So what good would it have done for him to open the car? The officers were like an arm's distance away from him when he started running. So the district court at one point found it implausible that he would have tried to enter the car to flee. So we argue that any finding of fact regarding entering the car was clear error. Thank you. You have reserved some time, Ms. Ramsey. Thank you. Good morning, Your Honors. May it please the court, Josh Handel for the United States. Just at the outset, I'd like to make one correction to our written submission to this court. We do not believe that Mr. Del Rosario waived all of his suppression arguments by not renewing his objection to this evidence at trial. As was stated on page 32 of our brief, that was an incorrect statement of the law, and the government withdraws that argument and apologizes to the court and to my friend on the other side. The correct standard of review here is the one you set out in United States v. Power, which we cited on page 36 of our brief. This court reviews the facts in the light most favorable to the district court's ruling on the suppression motion, the findings of fact and credibility determinations for clear error, and any conclusions of law de novo. Now, turning to the merits, I understand that the briefs spend a great deal of time arguing over credibility determinations and other factual disputes from the suppression hearings. But I'd like to use my time this morning to show this court how you can avoid that thicket altogether and decide this case on the inevitable discovery rationale based solely on uncontroverted testimony and undisputed facts. No matter what or whom you believe about the factual disputes below, the outcome here turns on two straightforward questions. Number one, would the officers have impounded this vehicle under these circumstances regardless of whether they did or did not find a gun at the scene of arrest? And number two, would that impoundment have been legally permissible? Because the answer to both questions is yes, this court should affirm the judgment below. With respect to inevitability, and I think this is responsive to the questions that Chief Judge Howard, you were asking my friend, the government elicited two pieces of testimony during the suppression hearings that are relevant to that point. First, that impoundment occurs, quote, every time a vehicle is seized with controlled substances, end quote. And second, that department procedure requires the officers, quote, to take the person that was arrested together with the vehicle to district, end quote. Neither of those pieces of testimony was controverted or otherwise interrogated through cross-examination, despite the defendant having an opportunity to do so. So if that vehicle had been parked in his driveway of the home, would they have taken it? I think that would be a very different question, Judge Kayada. What you just said, the two rules, if we take them at face value, two rules that you just said, the answer to that would be yes. Well, Judge Kayada, I think there's a little bit more to it. I think that the fact that the vehicle was parked on a public street affects the calculus, affects the degree of suspicion that the officers have to have. Let's talk about that, then. Suppose it's a public street where people routinely park their cars. Many, many towns, many areas, many cities, people park on the street. That's where they park their cars every night. If this were such an area, then would the impoundment policy apply to that any more than it would if it had been parked in his driveway? Well, Your Honor, I think under this court's precedent, it would. I would cite the court to your decision in Vega Encarnacion v. Babylonia, which we cited on pages 53 and 54 of our brief, where you said, quote, Where a driver is arrested and there is no one immediately on hand to take possession, the officials have a legitimate, non-investigatory reason for impounding the car. And looking at the facts of Vega Encarnacion, they're directly applicable here. You had someone who was called into the probation office. He parked his car on a public street. I think it was across the street from a 7-Eleven. There's no finding of fact that it was illegally parked. There's no finding of fact that it represented a danger to other motorists or an inconvenience to residents in the area or anything like that. The police, following his arrest at the probation office, the police impounded his car pursuant to a policy where they impound a vehicle when the sole legal driver present on the scene is arrested and transported. And this court said that under our case law, that's an acceptable community caretaking purpose. Can the officer testify that the impoundment was for investigatory purposes? There was, yes, there was testimony on that. There was testimony that it was because this was a controlled substances arrest. There was testimony that it was because the driver was arrested and transported. And there was testimony that it was for investigation. I think a fair reading of that record just shows that there were mixed motives here, which, again, under this court's decision in Cochia, you decided that the fact that an officer, quote, may have favored impounding the car in part because he wished to search its contents is not dispositive. But what if the policy itself is to bring it in for investigation? So we're not talking about the officer's subjective mind. We're simply talking about if we believe the officer, the department had a policy to bring them in for investigatory purposes. Well, Your Honor, I think, again, under the two rationales that the government is relying on here, one for for impounding a vehicle when it is seized in the course of an arrest for a felony under the controlled substances laws and the other for impounding a vehicle when the sole legal driver on the scene is being arrested and transported. Both of those are of a very plain community caretaking function. So if we adopted your view, let's say every city in the United States to drop the one sentence policy that says anytime it's a drug bust, always bring the car in for impoundment. You would tell us that's okay. Well, Your Honor, I don't know that that would necessarily be okay. How's that different than here? Well, I think that there could certainly be a constitutional challenge to a policy like that. I would point out that Mr. Del Rosario has not raised a constitutional challenge to that. He's saying the search was unlawful under the Constitution. But I don't think he has challenged the policy that was testified to. Let's say I read it as him saying you didn't have sufficient grounds under the Constitution to impound and search the car. And your answer to that is we had a policy. And my question is, if we find that policy adequate, then doesn't it follow that every city in the United States could adopt such a policy? And it would therefore follow that on all drug busts, the car would always be searched. Again, Your Honor, I think that that is well beyond what you need to decide. In this case, I would point to the fact, as we did in our briefs at the suppression hearings and again before this court, that there is a written Puerto Rico law authorizing forfeiture in these circumstances, authorizing it when there is a controlled substances arrest. I think, you know, under the Supreme Court's decision in Illinois versus Krull, the officers here were entitled to rely on the existence of that duly enacted statute until and unless it's judicially invalidated. So while I take Your Honor's point that there might be sort of a parade of horribles that we could think up, and there might be constitutional challenges to some of these policies and these forfeiture statutes and things like that down the line, the defendant here has not raised any of those. And I think the officers were it was reasonable for them to rely on the policies that existed and the statutes. So hasn't he challenged the search and hasn't he said the impoundment was unconstitutional? Yes. So he said that and then that shifts some burden to you to say your policy was legitimate. That's how you get around the challenge.  That's correct, Your Honor. And for that, again, And you want us to say it was legitimate either because there was a protocol or now you're saying because there was a plenary for statute, which brings me back to my parade of horribles. Then instead of every city, I just need 50 states to say seize it all the time. And so how how would you have us find for your favor in this case and yet not obliterate any resistance to impoundment anywhere in the country in any drug? Certainly. Again, Your Honor, I would say the distinguishing factor. Well, I would say that this court has held that the legality of an impoundment decision is judged under the totality of the circumstances. And so I believe that you could cabin your decision to just the totality of the circumstances present here. And I would say, you know, if we look at the testimony here, the district court received uncontroverted testimony that officers impound when there is a controlled substances arrest like this. Well, now you're back to the rule. What what's what in the totality distinguishes this case from a case I could have next week where it's under one of those statutes you just told us about? Sure. Well, in this case, we have. What can you rely on other than the protocol and the statute that would distinguish this from others? We have the fact that this vehicle is being parked on a public street, that the sole legal operator present at the scene is being arrested and transported, that police have reason to believe that this vehicle has been involved in transporting controlled substances. In fact, they have certainty that has been involved in transporting controlled substances because they arrest the operator on the scene with controlled substances and over 2000 dollars in cash on his person. I think to the extent that Chief Judge Howard was concerned about vandalism or theft. Certainly, those concerns are meaningfully heightened when the police have reason to believe that the vehicle in question is involved in transporting controlled substances. I can still talk about every single case in which there's a controlled substance bust. It's okay to impound the car because what you just said would be true in every single one of those cases. Well, Your Honor, that may be the case. Again, I do not think that that question or the constitutionality of a blanket policy like that is squarely presented here because I don't understand the defendant to have made either a facial or as applied challenge to that policy. But again, it's I think that's a it's an important and concerning question that I think this court could leave for another day. I think, again, the totality of the circumstances here where we are talking about a defendant who is observed in the middle of the night, moving his car suspiciously from street to street, who flees from the police officers when they engage him and ask him what's in his fanny pack. Who is seen and admits to having discarded controlled substances in full view of the officers who is found with over two thousand dollars in cash on his person for whom the officers later recover controlled substances that he discarded while he was running from them. Again, under the totality of the circumstances here, it is plainly reasonable for the officers to have impounded this vehicle, both under the Puerto Rico Uniform Forfeiture Statute and under the Puerto Rico Police Department's protocol of impounding vehicles when the sole legal operator is arrested and transported. And I just want to go back again and talk about mixed motives, because I think that was a big focus of the briefing. Again, as you said, in Cochia, the fact that an officer may have favored impounding the car in part because he wished to search its contents is not dispositive. The search or seizure undertaken pursuant to the community caretaking exception is not infirm merely because it may have been motivated by a desire to investigate crime. That view comports with this court's earlier holding in United States v. Rodriguez Morales, which we cited on pages 56 and 57 of our brief, where you said that as long as impoundment is, quote, justified on objective grounds, any speculation into the trooper's subjective intent would be supererogatory. So, again, I believe that at the end of the day, no matter whom you believe about the phone call from the gas station attendant or the discarded marijuana bag or Officer Osorio's use of the defendant's car keys, which were the three principal factual disputes between the defendants and the officers at the suppression hearings, the relevant questions here are still, first, do impoundment and inventory necessarily occur in a controlled substances arrest or loan driver arrest situation like this, and second, was impoundment reasonable under the totality of these circumstances? Because this vehicle was always going to be impounded, because the impoundment reasonably effectuated a forfeiture and additionally served a community caretaking function under this court's precedent, and because the firearm and drugs would certainly have been located during the permissible inventory search that followed, discovery of the evidence was inevitable and the district court correctly concluded that suppression was unwarranted. Unless the court has further questions, I respectfully request that you affirm the judgment below. Thank you. I wanted to respond to a couple of points made by counsel for the government. First is that the government's reliance on big incarnation for the proposition that because Mr. Del Rosario was arrested, his car could have been seized, I think is misplaced. That was a civil case where this court was considering the dismissal under Rule 12b-6, and the court said that the argument regarding seizing a car because the person was arrested was debatable and something that the court should consider on remand. So it didn't make a holding that that would actually be, it didn't make a holding that would be applicable in this case. Second, I wanted to point out that the officer's testimony at the suppression hearing regarding a procedure that they followed was regarding inventory searches. Once the car is impounded, we follow this procedure to conduct the inventory search. They did not testify regarding a procedure that governs the decision to seize the car. And again, I point out that when the officers were asked why, I'm looking at our appendix at 303, okay, why were you taking the vehicle from the area? Answer, for investigation purposes. In Rodriguez-Morales, this court held that community caretaking seizures are permissible to the extent, quote, police have solid non-investigatory reasons for impounding the car. And that's precisely what we're arguing is absent here. They had only investigatory reasons for impounding the car. What about the fact that they have found brunt of the defendant and that he had driven the car? They found drugs on the defendant and they testified that they arrested him for that, but they testified that they had no reason to believe there were drugs or anything else in the car. They did not have probable cause to search the car, which is precisely why the government argued that the seizure was reasonable only as a community caretaking seizure, not as a, we have probable cause to search it. And the policy that the government is arguing about regarding seizing cars that were involved in drug cases, that is something that was cited by the government in the briefing and never mentioned by the police officers. If they had arrested him while he was sitting in the car and found drugs on him, could they have searched the car? Yes, they could have. Well, doesn't the fact that he had been driving that car shortly before that close to that situation? No, I don't think so. I think it takes it outside of the realm of cases where a car is seized, incident to arrest, where a car is seized because the driver has been arrested and the car is left on the side of a public highway and nobody can take it. This is a case where we had a locked, legally parked car on a residential street parked by someone who always parked his car there. His car was better off being left there than it was being taken to the police station. There was nothing in the record to support any seizure to protect the car itself. The final point that I wanted to make was that when considering inevitable discovery, the district court below did not consider the third prong of the inevitable discovery analysis, which is whether the prophylaxis of the exclusionary rule would be sullied by applying the inevitable discovery doctrine here. I think that element of inevitably discovery does require this court to take a look at the clear error that was committed with regards to the factual findings because this is a case where officers testified that they did not search the car at the scene of the arrest. It was later revealed that when they were interviewed by the ATF agent who took this case federally, that that ATF agent's notes from that interview said that the cop said that they passed his car, that they reached into his pocket, grabbed his key, opened the car, saw the gun, closed the car, called their supervisor, and ordered a tow of the car for that reason. When you consider the extrinsic evidence that was offered on that front that bolsters Mr. Del Rosario's testimony, it makes sense all of a sudden the officer's decision to impound the car. And they decided to impound the car because they had looked inside and found the gun. And so that's where the issue regarding the legality of the impoundment takes us back to the issue of whether the car was illegally searched at the scene. And for that reason we ask the court to vacate the conviction and reverse the order denying suppression. I have one question. This issue comes up in so many cases. We get a single case and we have an affidavit from an officer saying it's a dangerous neighborhood. Or here we have an impoundment policy. Does your office ever, like in a case like this, engage in discovery to see, for this police department, how many times do they actually take the car in and how many times don't they? We have not done that. That's a good question, Your Honor. We have not done that. We have had issues, a lot of issues, with transparency with the Puerto Rico Police Department. And this case highlights that. The original theory that was presented to the defense… But I think you've answered my question. You did not. What's that, Your Honor? You did not conduct any discovery in this case to see do they really seize the cars all the time? No. We don't have access to statistics about car seizures, no. Thank you, Your Honors.